H. B. BURKE, JR., J. D. RUSS, JR., and P. D. BEVILLE, *Appellants,* v. SECURITY FINANCE COMPANY, *Appellees.*

146 So. 669.

147 So. 270.

Opinion filed March 3, 1933.

Re-hearing denied March 28, 1933.

*William Fisher* and *Ernest E. Mason,* for Appellants;

*Forsyth Caro,* for Appellee.

DAVIS, C. J.—The Ala-Florida Motor Corporation, a Florida corporation, while insolvent, distributed certain of its assets to its stockholders in violation of law (Section 6050 C. G. L., 4119 R. G. S.). The assets distributed consisted of accounts receivable due to the corporation by J. D. Russ, Jr., and H. B. Burke, Jr.. but assumed by Burke. The total par value of same was $5,103.28 in the aggregate. Each of the stockholders, four in number, took a share in the distribution amounting to $1,275.82, each, which they severally claimed and charged up as salaries due them by the corporation.

Security Finance Corporation, a judgment creditor of the Ala-Florida Motor Corporation, to the extent of its judgment in the sum of $2,929.48, obtained a decree against the distributees of the assets of the insolvent corporation, pursuant to a creditor's bill brought to set aside the alleged

fraudulent distribution of assets. The decree charged the several stockholder defendants with personal liability to account for the face value of the assets they had unlawfully received from the insolvent corporation.

The appeal is from the final decree. While all the defendants join in the appeal, it is principally argued on behalf of the appellant P. D. Beville. Beville was held personally liable to the extent of $1,275.82, for which amount a money decree against him was entered.

The theory of the law is, that by a creditor's bill like the one here involved, a creditor is allowed to recover assets of an insolvent corporation, that have been unlawfully distributed to stockholders in violation of the rights of creditors to enforce their claims against such assets. Note 38 L. R. A. 103.

The recovery allowed in the form of a personal money decree on an accounting for the value of assets unlawfully distributed to, and received by, stockholders should not be in excess of the real value to the creditors of the assets involved. Such value may, or may not, be the value represented by the *face* amount of bills receivable of a corporation due from one of its debtors. Real value is often much less than face value, where the debtor to the corporation is without means to pay his debt, or is not capable of being made to respond to the extent of its full face value, by ordinary legal means.

In the case now before us the proof is that P. D. Beville, one of the stockholders of the insolvent Ala-Florida Motor Corporation, participated in an equal division of assets of the corporation amongst four stockholders, of which he was one. The assets divided consisted of an aggregate debt of $5,103.28 due from one of them, one Burke, to the corporation. There is no proof in the record as to what the value of Burke's debt to the corporation was at the time

of the division, nor as to how much could have been realized from it for the benefit of the creditors of Ala-Florida Motor Corporation, by legal means.

All that the judgment creditor, Security Finance Corporation, was entitled to have decreed to it on its creditor's bill against Ala-Florida Motor Corporation's stockholders was that such stockholders should either return unimpaired the assets they had unlawfully received, or be held personally liable through a money judgment to *re-imburse* the Ala-Florida Motor Corporation for the actual fair value of the assets distributed to them while the corporation was insolvent.

The judgment creditor was not entitled to have what is in effect a penalty levied against each of such stockholders in the form of a money judgment for the *face* value of the intangible assets in the absence of proof that the assets received by the stockholders were worth their face value at the time of the distribution, if collection had to be made by ordinary legal means.

*Re-imbursement* for the value of the dissipated assets to the insolvent corporation, in lieu of a return of the assets themselves, is all that can be decreed in such cases. The corporation creditor is entitled to be put in no better position against the stockholders personally, than it was in against the insolvent corporation had the dissipation of assets not been made.

That fact that Beville collected certain sums on his share of the intangible assets distributed to him in the form of bills receivable, may or may not indicate that such bills receivable, at the time of the distribution, were actually worth at their fair value, what was later collected on them. Common experience indicates that in ordinary cases, the fair market value of an insolvent corporation's bills receivable, notes and accounts is what can be realized on them by or-

dinary legal remedies, or what such assets can be sold for, so far as the corporation's creditor's are concerned, not what can be collected on them by a particular individual, in a long course of diligent personal pursuit of the debtor. The value of such items may be greater than their market value to one who acquires such claims to collect in any way that he can, by moral or legal persuasion.

Where a corporation while insolvent, undertakes to distribute its assets to its stockholders, to the prejudice of the corporation's creditors, such creditors may, by suit in equity in the form of a creditor's bill, avoid the dissipation of assets thus brought about, and may have a personal decree against the stockholders, compelling them either to return to the corporation the assets so unlawfully distributed, or be held personally liable in judgment to re-imburse the corporation to the extent of the actual market value of the dissipated assets at the time and place of the unlawful distribution.

But in every case, where a personal money decree is rendered against stockholders, for the value of assets unlawfully received by them through an unauthorized distribution while the corporation was insolvent, the recovery must be confined to the actual fair market value of the assets at the time and place they were unlawfully converted by the stockholders to the prejudice of creditors. A decree in the form of a money *penalty* for the face value of unlawfully diverted intangible assets is unauthorized. And so is a decree based on face value alone, unless there is proof to show that the fair market value is equal to the face value of such assets. Muskegon Valley Furn. Co. v. Phillips, 113 Ala. 314, 21 Sou. Rep. 822.

In the case at bar, the court below appears to have entered its decree on the theory that complainant was entitled to a money judgment for the face value of the wrongfully dis-

tributed assets, without regard to whether or not such assets were worth their face value to the insolvent corporation's creditor's at the time they were diverted. It likewise appears that no sufficient consideration was given to the proposition, that a return or surrender of the particular assets back to the insolvent corporation, might not be a sufficient redress for the wrong done, if such assets remained unimpaired.

The decree appealed should therefore be reversed, with directions to re-open the case and have such further proceedings herein as will lead to a decree not inconsistent with this opinion.

Reversed and remanded.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

## ON PETITION FOR RE-HEARING

PER CURIAM.—The original opinion in this case filed on March 3, 1933, does not undertake to direct what decree the Chancellor shall hereafter enter. We simply held that the decree reversed did not appear to have been arrived at by an appropriate consideration of applicable principles of law as declared in our opinion, and accordingly reversed the whole decree for reconsideration of the general controversy in the light of the law of the case as was by us declared in the opinion of March 3, 1933.

All the defendants except Beville were held personally subject to a money decree, on the theory that the proceeding as to them was no more than an equitable garnishment of what they equitably owed to the corporation, thereby rendering them subject to personal judgment in favor of the complainant for the amount of their true indebtedness to the corporation. Nothing in our opinion militates against this idea.

The fact that the decree appealed from was reversed in its entirety, even as against the defendants other than Beville, is only significant of a policy adopted by this Court, and applied in many cases to the effect that upon such a reversal, the Chancellor below shall be left free to again write his own decrees, but in accordance with his re-determination of the equities as re-considered in the light of the opinion of this Court.

Nothing in the opinion already rendered is to be construed as holding that, insofar as Burke and Russ are concerned, that the Chancellor below is to be precluded from again entering a money decree in the nature of a garnishment of the unpaid debts of Burke and Russ to the insolvent corporation, to the extent such debts appear to have been wrongfully cancelled.

As to Beville we find no occasion to modify or add to anything that was said by us in the original opinion.

Re-hearing denied.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.